IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN C. HALTERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-06-0311-AR |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying his application for disability insurance benefits. The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner has answered and filed the administrative record (hereinafter Tr. _____). Both parties have briefed their respective positions, and thus the matter is at issue. For the reasons stated herein, the decision is affirmed.

### I. PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits on March 2, 2001, with a protective filing date of February 7, 2001. Tr. 82, 83-85. Plaintiff alleged a disability onset of May 4, 2000. Tr. 82, 83. The application was denied on initial consideration and on reconsideration at the administrative level. Tr. 60, 61, 62-65, 68-70. Pursuant to Plaintiff's request, a hearing de novo was held before an administrative law judge on January 29, 2003. Tr. 35-59, 71-72. Plaintiff appeared with his attorney, and both he and his wife offered testimony in support of his application. Tr. 37, 38-51, 52-55.

A vocational expert also testified at the request of the administrative law judge. Tr. 55-58, 77. The administrative law judge issued his decision on February 26, 2003, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that he was thus not entitled to benefits. Tr. 19-21, 22-26. The Appeals Council denied Plaintiff's request for review on May 15, 2003, and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 4-5. Plaintiff appealed the final decision of the Commissioner to this Court. The cause of action, <u>Halterman v. Barnhart</u>, Case No. CIV-03-949-HE, was referred to the undersigned pursuant to 28 U.S.C. §636(b)(1)( B) for initial proceedings. In a Report and Recommendation entered July 19, 2004, it was recommended that Plaintiff's application be remanded to the Commissioner for further administrative proceedings. Tr. 365-75. On August 17, 2004, United States District Judge Joe Heaton adopted that Report and Recommendation and ordered Plaintiff's application remanded to the Commissioner for further administrative proceedings consistent with the Report and Recommendation. Tr. 376-77.

Following the order entered by Judge Heaton, the Appeals Council vacated the previous decision of the Commissioner and remanded Plaintiff's application for a second administrative hearing. Tr. 380-81, 382. The administrative law judge conducted a second hearing on Plaintiff's application on February 2, 2005. Tr. 541-69. Plaintiff appeared with his attorney, and offered testimony in support of his application. Tr. 543, 544-65. A vocational expert also testified at the request of the administrative law judge. Tr. 397, 566-68. The administrative law judge issued his decision on September 17, 2005, again finding that Plaintiff was not disabled within the meaning of the Social Security Act

and that he was thus not entitled to benefits. Tr. 341-43, 344-56. The Appeals Council denied Plaintiff's request for review on January 25, 2006, and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 324-27.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotations and citations omitted). The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751 & n. 2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience. Id. at 751.

## III. THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. 345. He first found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 346, 355. At step two, the administrative law judge found that Plaintiff has an organic brain disorder, status post head injury; cognitive disorder post trauma; and adjustment disorder with mixed emotional features, impairments that are "severe." Tr. 346, 355. At step three, the administrative law judge determined that these severe impairments were not severe enough to meet or equal any of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4, specifically Listing 12.02,Organic Mental Disorders. Tr. 346, 355. He next found that Plaintiff had the residual functional capacity to perform a significant range of work at any exertional level. Tr. 353. He found that the claimant's ability to perform the requirements of work is impeded in that he only had the "ability to remember and understand very short and simple instructions and carry out simple routine tasks." Tr. 353, 355. He further found that Plaintiff was able to perform simple, unskilled, one to two step repetitive tasks, and that he must work in relative isolation with limited contact with peers and supervisors. Tr. 353, 355. Finally, the administrative law judge concluded that because of stress Plaintiff was limited to performing routine, repetitive low stress work. Tr. 353, 355. Based on this residual functional capacity, the administrative law judge found at Step Four of the sequential evaluation process that Plaintiff was not able to perform his past relevant work. Tr. 354, 356. However, based

upon Plaintiff's residual functional capacity and vocational factors, the administrative law judge found that there were unskilled jobs that Plaintiff could perform, such as battery stacker, semiconductor packager sealer, and hospital cleaner. Tr. 354-55, 356. Thus, the administrative law judge found that Plaintiff was not disabled and was not entitled to benefits.  Tr. 355, 356.

**IV.   ISSUES ON APPEAL**

Plaintiff raises two issues on appeal.  First, the Plaintiff claims that the administrative law judge erred in his consideration of the medical evidence.  Plaintiff's Opening Brief, p. 3-9.  In his second claim, the Plaintiff alleges that he lacks the residual functional capacity to perform the substantial gainful activity identified by the vocational expert.  Plaintiff's Opening Brief, p. 9-10.

**V.  DISCUSSION**

**A.  The Medical Evidence**

In Ground One, Plaintiff argues that the administrative law judge erred because he failed to discuss certain medical evidence that Plaintiff believes supports his claim that he is disabled, specifically reports from his treating psychologist, Douglas O. Brady, Ph.D.  The Commissioner argues that the administrative law judge reviewed all of the pertinent evidence and made the necessary findings under the treating physician rule and that his findings are supported by substantial evidence.

In deciding how much weight to give the opinion of a treating physician, an administrative law judge must first determine whether the opinion is entitled to "controlling weight."  <u>Watkins v. Barnhart</u>, 350 F. 3d 1297, 1300 (10th Cir. 2003).  An

administrative law judge must give the opinion of a treating physician controlling weight if it is both (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." Id. (internal quotation marks omitted).  Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (internal quotation marks omitted).  After considering the requisite factors, the administrative law judge must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2).  "Finally, if the [administrative law judge] rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (internal quotation marks omitted).

In considering Dr. Brady's opinions, the administrative law judge noted the following:

> On January 16, 2003, Dr. Brady reported that, in his professional opinion, the claimant would meet a listing of 12.02 Organic Mental Disorder.  He has memory impairment both immediate and short term.  He has mood disturbance characterized by irritability and depression.  His wife and family have described a change both for mood and personality following his second closed head injury.  He has very poor impulse control and is an accident risk for driving and operating heavy equipment.  He had two formal neuropsychological evaluations and both place him within the impaired range.  Dr. Brady assessed the claimant to have marked difficulties in maintaining concentration, persistence or pace.  He reported the claimant has had one or two repeated episodes of decompensation, each of extended duration that had been continuous since February 4, 2000.
>
> Dr. Brady also completed Medical Source Statements wherein he reported the claimant had moderate to marked limitations in the area of understanding and memory and sustained concentration and persistence. He had mild to moderate limitations it the area of social interaction, and moderate to marked limitations in adaptation (Exhibits 23F and 27F).

> Generally the opinion of a treating physician is accorded a great deal of deference. Indeed, it can be entitled to controlling weight, provided it is supported by medically acceptable clinical and diagnostic techniques and it is not inconsistent with other substantial evidence in the case (Social Security Ruling 96-2p). While Dr. Brady's opinion regarding the claimant's limitations is probative and has been given due consideration, the Administrative Law Judge determines the medical opinion is not substantiated by the clinical findings and is inconsistent with the other evidence of record. For example, at the time of this opinion, the claimant was regularly attending the Career Tech in Lawton. On November 6, 2002, Dr. Brady reported the claimant is highly motivated in his retraining and works well in his classes. He further reported, "I see his prognosis as successful for retraining and other employment outside of trucking as excellent." Dr. Brady also reported in November 2002 the claimant's prognosis was excellent (Exhibit 20F). There are other numerous references to how well the claimant was doing in his clinical notes. On March 22, 2004, Dr. Brady reported the claimant was "certainly close to the maximum medical or psychological improvement from my treatment. My present evaluation is that he is doing remarkably well. He was approaching the graduation date for his retraining." Dr. Brady reported he believed the claimant would certainly be able to return to the work force (exhibit 31F). This is inconsistent with Exhibits 22, 23 and 27 from Dr. Brady.

Tr. 351-52.

At the first stage of the analysis the administrative law judge considered whether Dr. Brady's opinions were well-supported by medically acceptable evidence and concluded they were not. As set forth above, the administrative law judge concluded that Dr. Brady's opinions about Plaintiff's mental limitations were inconsistent with his own treatment notes. Tr. 351-52. Having made these findings, the administrative law judge satisfied the first step of the analysis, concluding that he was not obligated to give Dr. Brady's opinion controlling weight.

The administrative law judge was then required to complete the second step of the analysis, consideration of the factors set forth in 20 C.F.R. § 404.1527 in order to

7

determine what weight, if any, he should give to Dr. Brady's opinion. The administrative law judge continued his consideration of Dr. Brady's opinion by noting the following.

> The claimant continued to report having headaches, but these have been evaluated by two neurologists and there was no known etiology. Neurontin had helped him with his headaches. At the consultative mental status examination in May 2001, the claimant's concentration and memory were reported to be intact. There was no evidence of significant depressive symptoms. Although the claimant was found to have deficits in his attention and concentration abilities and processing speed when he underwent neuropsychological evaluation in August 2001 (Exhibit 18F), with his compliance and motivation to resume employment, he was able to successfully learn and complete his retraining program. Finally, at the consultative mental status examination in May 2005, Dr. Swink reported the claimant earned a perfect score on the Folstein Mini-mental State Examination and no memory deficits were evident. Also, evaluation revealed he had no difficulty focusing attention, comprehending instructions and carrying out basic tasks (Exhibit 32F). Therefore, the undersigned give little weight to the opinions and findings of Dr. Brady where they are not supported by the signs, symptoms and medical findings in the record.

Tr. 352. As noted by the Commissioner, a treating physician's opinion may be rejected when it is inconsistent with his own treatment records. Eggleston v. Bowen, 851 F.2d 1244, 1246-47 (10th Cir. 1988). Clearly this was the administrative law judge's determination. As noted by the administrative law judge, throughout his contemporaneous treatment records Dr. Brady indicated that Plaintiff had made great improvement, that he was motivated to complete retraining and resume employment at a profession other than truck driving, and overall that he was doing quite well. Tr. 261-62, 268-76, 295-309, 491-92, 500-01, 503-28. However, when he completed his medical source statements, all of the Plaintiff's improvement seemed to have disappeared and Dr. Brady painted a bleak picture of Plaintiff's abilities.

The administrative law judge's determination that Dr. Brady's opinions on his treating source statements were inconsistent with his own treatment records is supported by the records of another treating physician. Charles W. Dickerson, M.D., noted that Plaintiff was functioning well and that as long as he was taking his medications, he felt just fine and had no trouble. Tr. 349, 470. Dr. Dickerson reported that Plaintiff was dong well in his re-training. Tr. 469. Dr. Dickerson's findings, consistent generally with Dr. Brady's treatment notes, support the administrative law judge's conclusion that Plaintiff did not suffer from a disabling mental condition and support the administrative law judge's treatment of Dr. Brady's opinions.

Plaintiff also contends that the administrative law judge should have re-contacted Dr. Brady in an effort to substantiate Plaintiff's claim of disability. "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the [administrative law judge] 'receive[s] from [the claimant's] treating physician' that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). There is no basis for concluding from the record in this case that the administrative law judge believed the information he received from Dr. Brady was inadequate. Rather, as expressed by the administrative law judge, Dr. Brady's opinions regarding Plaintiff's limitations were inconsistent with his own treatment notes and the notes of other physicians. Accordingly, the administrative law judge's failure to re-contact Dr. Brady provides no basis for remand of this matter to the Commissioner.

9

**B. Erroneous Residual Functional Capacity Analysis**

In his second proposition of error, the Plaintiff argues that the administrative law judge erred in assessing his residual functional capacity to perform a significant range of work at any exertional level. Plaintiff contends that the administrative law judge erred because he failed to determine whether Plaintiff could perform work on a full-time basis.

Plaintiff asserts that the administrative law judge's conclusion is flawed because the vocational expert testified that a hypothetical individual with the limitations imposed by Dr. Brady and who is unable to complete a full workday from psychological-based symptoms would be unable to perform substantial gainful activity. Tr. 567-68. The vocational expert testified that no jobs would exist for such a hypothetical individual. Tr. 568. Plaintiff asserts that this conclusion undercuts the administrative law judge's determination that he can perform substantial gainful activity.

Generally, a claimant must be able to perform work-related activities on a full-time basis. See Hayman v. Apfel, No. 97-5165, 1998 WL 458575 at * 2 (10th Cir. Aug. 4, 1998)[1] (citing Sisco v. United States Dept. of Health & Human Servs., 10 F.3d 739, 745 (10th Cir. 1993)) see also Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996 ) ("Ordinarily, [residual functional capacity] is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

---

[1] This and any other unpublished decision cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

If the administrative law judge had adopted Dr. Brady's limitations or imposed a limitation on Plaintiff's ability to work full-time, the administrative law judge's failure to adopt the vocational expert's findings regarding his inability to perform substantial gainful activity would be error.  However, the administrative law judge did not adopt Dr. Brady's limitations, and as set forth above, that determination was supported by substantial evidence.  Furthermore, the administrative law judge was not required to accept the vocational expert's answer when he did not impose the same limitations on Plaintiff's ability to perform substantial gainful activity on a full-time basis.  The administrative law judge followed the vocational expert's opinion with respect to the hypothetical question which accurately reflected Plaintiff's residual functional capacity.  See Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999) ("[administrative law judge] is only required to ask hypotheticals encompassing impairments that find support in the record"); Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) (hypothetical questions "must reflect with precision all of [claimant's] impairments ... but they need only reflect impairments and limitations that are borne out by the evidentiary record").  Accordingly, the administrative law judge did not err in failing to adopt the vocational expert's conclusion that no work would be available.

Furthermore, the administrative law judge noted that Plaintiff had been working sporadically, had been seeking work, had successfully attended school full time, with some accommodations related to the time necessary to complete testing, and provided child care to his grandchild while his wife was at work.  Tr. 350-51.  "Part-time work can be considered substantial work activity."  Rupe v. Chater, No. 95-5031, 1996 WL 131665,

* 2 (10th Cir. Mar. 25, 1996). Thus, Plaintiff's ability to care for his own needs, those of his grandchild and to work part-time, while hoping to find full-time work and his ability to attend school for successful retraining is all evidence that supports the administrative law judge's finding that Plaintiff can work on a sustained basis. See Gay v. Sullivan, 986 F.2d 1336, 1339 (10th Cir. 1993) (while not conclusive, such activities as school attendance may be considered by the Commissioner along with the medical evidence in determining a claimant's right to disability benefits). Accordingly, Plaintiff is not entitled to remand on this basis.

## CONCLUSION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the Court finds that the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and should be affirmed.

DATED this 10th day of January, 2007.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE